UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tewart Enterprises, Inc.,

    Plaintiff,

v.

Jonathan W. Dawson, et al.,

    Defendants.

Case No. 1:05cv30

Judge Michael R. Barrett

## ORDER

This matter is now before the court pursuant to Defendants' Federal Rules of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction (Docs. 2 & 19). The Plaintiff filed motion in opposition and requests oral argument on the issue. (Doc. 8). Defendants filed a memorandum in support (Doc. 9).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought suit against Defendants Jonathan Dawson and Plan B Consulting, Inc. for violations of Ohio's codification of the Uniform Trade Secrets Act[1] and interference with contracts. Jurisdiction is based on diversity of citizenship. Plaintiff initially filed its complaint in the Warren County Court of Common Pleas. The claim was removed to this Court by Defendants based on diversity jurisdiction.

Tewart Enterprises, Inc. (TEI) is an Ohio corporation with its principle place of business in Ohio. (Doc. 8-1, at 3). TEI provides sales and training services and also products to automotive dealerships. (Doc. 8-1, at 3). Defendant Jonathan Dawson

---

[1] Plaintiff's complaint improperly cites the statute as § 1331.61, et seq. The statute is actually §§ 1333.61-1333.69.

(Dawson) is not a resident of Ohio and was not a resident of Ohio for any time pertinent to this suit.[2] (Doc. 2-1, at 5). He is an officer of Defendant Plan B Consulting, Inc. (Plan B), a Nevada corporation, with its principle place of business in Minnesota, and the corporation's sole employee. (Doc. 2-1, at 7). Dawson met Mark Tewart, founder of TEI, about possible employment at an out of state sales conference, and then later contacted Tewart in Ohio.[3] (Doc. 8-1, at 4). Pursuant to these contacts, the parties entered into a "Contract Employment Agreement," dated June 18, 2003. (Doc. 2-1, at 4). Plaintiff alleges that Dawson worked with TEI's clients and perspective clients, in states all across the country,[4] (Doc. 2-1, at 5), including Ohio.[5] During Dawson's employment, he communicated with Tewart in Ohio by telephone, facsimile transmission, mail, and electronic mail, (Doc. 2-1, at 5), and visited Ohio twice, both times in connection with his TEI employment[6] ( Doc. 2-1, at 5-6).

In December, 2004, after 16 months, the employment agreement between Dawson and TEI ended. (Doc. 8-1, at 5). Dawson then sent letters to dealerships where he had performed in-house training while with TEI, and informed them that he would continue to

---

[2] Dawson was a resident of Kansas until October, 2002, and has been a resident of Minnesota since that date.

[3] The Defendants allege that the Tewart "recruited" Dawson. (Doc. 2-1, at 4).

[4] Dawson serviced Kansas, Nebraska, Iowa, Oklahoma, Arkansas, and Texas. His operation was later expanded to include both Wisconsin and Minnesota.

[5] Plaintiff's motion in opposition of summary judgment states that "Dawson worked with TEI's clients, and prospective clients, all across the United States, including . . . Ohio." (Doc. 8-1, at 5). Plaintiff appears to be referring to the two visits that Dawson made to Ohio.

[6] One visit was for two weeks in October, 2003 to assist in a workshop that Tewart was giving, and a second time in August 2004 to give a training workshop at the Abrogast Buick-Pontiac dealership. Plaintiff characterized the two week trip as "two weeks in Ohio soliciting business at auto dealerships and developing business contacts."

2

offer sales and marketing training on his own; one of the letters was sent to the Abrogast dealership in Ohio. (Doc. 2-1, at 6). Also, post termination, Dawson was approached in New Orleans, Louisiana by a representative from an Ohio dealership. (Doc. 2-1, at 6).

The Plaintiff also alleges that Defendants solicit "the same services, materials, processes, and information that Dawson garnered from his time with Tewart and TEI" through an interactive website, (Doc. 8-1, at 6), www.planbconsultinginc.com, (Doc 9-1, at 1 n. 1). The website listed the Abrogast dealership as a reference. (Doc. 9-1, at 2). The post-termination contacts with Ohio have yielded no commerce between Defendants and any resident of Ohio. (Doc 9-1, at 5).

## II. ARGUMENTS OF THE PARTIES

### A. Defendants

Defendants argue that the Court does not have personal jurisdiction over Dawson. Mere employment with an Ohio corporation, only two visits to Ohio, a single letter, and a generally accessible website do not constitute purposeful availment. Additionally, the post-employment contracts with Ohio have not resulted in any commercial connection to Ohio.

### B. Plaintiff

TEI argues that the Court does have personal jurisdiction over Defendant Dawson because he was employed by an Ohio corporation, and subsequent to that employment he, and Defendant Plan B, solicited business from Ohio and maintained an interactive website that was accessible from Ohio.

**III. ANALYSIS**

The exercise of personal jurisdiction requires satisfaction of the forum state's long arm statute and of the constitutional limits of due process.[7]  *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

**A. Ohio's Long Arm Statute**

Ohio's long arm statute is codified as Ohio Revised Code § 2307.382, and states in the pertinent part that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

The statute is "very broadly worded." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990).  The Ohio Supreme Court has defined "transact" as "to *prosecute negotiations*; to carry on business; *to have dealings* . . . . [The definition] *may involve business negotiations* which have been either wholly or party brought to a conclusion." *Id.* (emphasis in original). *Kentucky Oaks* involved a lease agreement for property located outside of the forum state. *Id.* at 479. However, the Ohio

---

[7] The Ohio Supreme Court has noted that the Ohio long arm statute is not coterminous with the limits of due process.  *See Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n. 1 (Ohio 1994).  The Defendants did not brief the issue on the Ohio long arm statute, and the Plaintiff has only included a quote from the statute without any supporting case law.

4

Supreme Court still found that clause (1) "transacting any business in this state" was satisfied when an out of state defendant lessee negotiated with the plaintiff lessor by telephone, and then entered into a lease that required payments be made to the forum state lessor. *Id.* at 480.

The present case falls within the *Kentucky Oaks* precedent and satisfies the transact clause of the statute. Here, as in *Kentucky Oaks*, Defendant Dawson contacted the Plaintiff corporation by telephone, which resulted in a contract between the two parties. Additionally, the Defendant Dawson was physically present in Ohio to conduct business on two separate occasions. Defendant Dawson's contacts with Ohio satisfy the state's long arm statute.

### B. Due Process

The due process standard for a Federal Rules of Civil Procedure 12(b)(2) motion requires that "minimum contacts" are satisfied so as not to offend "traditional notions of fair play and substantial justice." *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)(citing *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general or specific jurisdiction. *Bird v. Parson*, 289 F.3d 865, 873 (6th Cir 2002). General jurisdiction allows a court to hear a plaintiff's claims against a nonresident defendant provided the defendant's contacts with the forum state are of a "continuous and systematic" nature. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction allows a court to hear a plaintiff's claims against a nonresident defendant provided the defendant's contacts with the forum state give rise to the cause of action. *Id.* at 414 n. 8. The plaintiff bears the burden of proof in establishing jurisdiction over the nonresident defendant. *See Neogen*, 282 F.3d at 887

(citing *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)).  If a court rules on a 12(b)(2) motion to dismiss without an evidentiary hearing on the issue, the court must construe the facts in the light most favorable to the plaintiff, and the plaintiff need only make a prima facie showing of jurisdiction.  *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### 1.  General Jurisdiction[8]

For a court to assert general jurisdiction over a defendant, the defendant's contacts with the forum state must be "continuous and systematic."  *Helicopteros*, 466 U.S. at 416. *Perkins v. Benguet*, 342 U.S. 437 (1952), and *Helicopteros* are the two seminal United States Supreme Court cases that have addressed general jurisdiction.  In *Perkins*, the defendant was a foreign corporation whose president and general manager maintained an office in the forum state, kept company files and held meetings in that office, and supervised the policies of the corporation from the office.  *Id.* at 447-448. Taken together, the Court characterized the contacts as "continuous and systematic," and found the exercise of jurisdiction proper.  *Id.* at 448.  In *Helicopteros*, the Supreme Court found the assertion of general jurisdiction improper when the defendant nonresident corporation's contacts with the forum state included "sending its chief executive officer to [the forum state] for a contract-negotiation session; accepting into its New York bank account checks drawn on a [forum state] bank; purchasing helicopters, equipment, and training services from [a forum state corporation] for substantial sums; and sending personnel to [the forum

---

[8] The Plaintiff's Response to Defendants' Motion to Dismiss contains no case law in support of the exercise of general jurisdiction.  Doc 8-1 at 7-8.

state] for training." 466 U.S. at 416. *Helicopteros* and *Perkins* demonstrate that general jurisdiction is a fact intensive inquiry.

In *Nationwide Mutual Insurance Company v. Tryg International Insurance Company, Ltd.*, 91 F.3d 790 (6th Cir. 1996),[9] the court addressed the effect of a contractual relationship on the exercise of general jurisdiction. The nonresident defendant had participated in a reinsurance pool operated by the forum state corporation. *Id.* at 791. The court "quickly dispense[d]" of the argument that the defendant's contractual participation in the reinsurance agreement amounted to systematic and continuous conduct in the forum state: the agreement "did not require [defendant] to conduct substantial activities in [the forum state]." *Id.* at 793-794. In *Bird v. Parsons*, 289 F.3d at 874, the court expressly stated that the maintenance of a "website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction." In *Bird*, forum residents were able to transact business with the nonresident corporation through a website, which had generated up to 4,666 transactions. *Id.* at 872. However, the court noted that the capability to transact business did not compel the exercise of general jurisdiction. *Id.* at 874. General jurisdiction requires a high level of contact to satisfy due process.

In the pending case, the Defendants' contacts with Ohio do not justify an exercise of general jurisdiction. Defendant Dawson had a contractual relationship with an Ohio corporation for approximately 16 months. Like in *Nationwide*, 91 F.3d at 794, the contractual relationship did not require "substantial activities" in Ohio: only two trips and communication by phone, fax, mail, and email. Also, Defendants' operation of a website

---

[9]The *Calphalon* case, very similar factually to the present case, did not even discuss general jurisdiction, and found that not even specific jurisdiction existed. 228 F.3d 718.

accessible from Ohio does not affect the general jurisdiction analysis. *See Bird*, 289 F.3d at 875. Additionally, unlike in *Bird*, the Plaintiff makes no allegation that the website generated any business within Ohio. Defendant Dawson's other Ohio contact was the post termination letter to the Ohio dealership. The employment, two trips, various communications, and maintenance of a website cannot tenably be characterized as continuous and systematic, and therefore the exercise of general jurisdiction in this case would be improper.

### C. Specific Jurisdiction

The exercise of specific jurisdiction requires that a nonresident defendant have certain "minimum contacts" with the forum state to ensure that the exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *See Neogen*, 282 F.3d at 889 (quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit Court of Appeals has developed a three part test for the exercise of specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. Purposeful Availment

The purposeful availment prong of the test is designed to ensure that jurisdiction will be based on actions by the defendant which create a substantial connection to the forum

state, that the defendant can reasonably anticipate being haled into court in the forum state, and that jurisdiction will be based on more than merely random, fortuitous, or attenuated contacts. *Neogen*, 282 F.3d at 889 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 474-475 (1985). In *Burger King*, the Court found the exercise of specific jurisdiction proper when the defendant negotiated with a forum state corporation to establish a 20 year franchise agreement that contained a choice of law clause in favor of the forum state, and then failed to make the contractually required payments to the forum state corporation. 471 U.S. at 479-480. The Court also noted that the defendant was experienced in business and represented by counsel throughout the negotiations, and even received some concessions from the corporation's forum state headquarters. *Id.* at 484-485.

While *Burger King* dealt with the negotiation of a franchise agreement, in *Calphalon*, the court addressed purposeful availment in the context of an out of state employee representative who had minimal physical presence in the forum state. The defendant represented the plaintiff for 16 years under a "letter agreement" and then for 17 months under the a manufacturer's representative contract. *Calphalon* 228 F.3d at 720, 722. The contract contained a choice of law clause in favor of the forum state, *Id.* at 720, and the defendant also sent a letter through counsel to the plaintiff, *Id.* at 723. The court held that even the sum of all of these contacts was not enough to establish purposeful availment because the defendant's contacts with the forum state were not the result of an intentional exploitation of the privilege of the forum state; rather, the contacts were the result of the plaintiff corporation's choice to operate from the forum state. *Id.* at 722-723. A website can also affect the purposeful availment analysis. In *Neogen*, the nonresident defendant provided a blood testing service to 14 forum state residents and anticipated providing the

same amount of services the next year. 282 F.3d at 886-887. The defendant sent forms to forum state customers, collected samples and payment from forum state customers, and provided access to results through mail or website. *Id.* at 886-887. The court stated that the maintenance of the website accessible from the forum state alone did not constitute purposeful availment. *Id.* at 890. But, the court also noted that a "defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997).[10] The non-resident defendant's website offered to perform services in "any state," and included a geographic breakdown of customers which expressly included the forum state. *Id.* at 891. The court characterized the notion that the website constituted purposeful availment as a "close question," but declined to decide the issue. *Id.* Instead, the court found purposeful availment with the combination of the website and the 14 yearly sales. *Id.* at 891-892.

The present case is most factually similar to *Calphalon*. *Calphalon*, however, involved a much longer relationship between the nonresident defendant and the forum plaintiff. 228 F.3d at 720. Similar to the nonresident employee in *Calphalon*, Defendant Dawson communicated with the forum state corporation though phone, mail, and fax. *Id.* The *Calphalon* case also involved two factors supporting purposeful availment not alleged

---

[10]The *Zippo* case is only persuasive authority. The *Zippo* court espoused a sliding scale classification of websites for personal jurisdiction analysis. 952 F.Supp. at 1124. At one end of the scale was a defendant's website that "clearly does business over the Internet," and the other end a website that merely allowed the defendant to "simply post[ ] information." *Id.* In the middle of the two extremes would be a site that allows the exchange of information. *Id.* While the Defendants' in the present case site may qualify as clearly doing business over the internet, the Plaintiff makes no allegation that any of that business had any connection to Ohio.

10

in the present case: a choice of law provision favoring the forum state and the nonresident defendant's letter expressing possible litigation claims. *Id.* at 723.

However, the present case does also have similarities to *Burger King* where the Court allowed the exercise of personal jurisdiction. The defendant in *Burger King* reached out and negotiated to establish a 20 year relationship with a forum state corporation. 471 U.S. at 479. He created a "substantial and continuing" relationship with forum corporation's headquarters and was on notice from the contract that the any putative lawsuit might be in the forum state. *Id.* at 487. Similarly, in the present case, Dawson reached out to Mr. Tewart in Ohio to create a business relationship with an Ohio corporation.

Arguably, there exists some tension between *Calphalon*, where a defendant had a 17 year relationship with a forum corporation,[11] 228 F.3d at 720, and *Burger King*, where a defendant negotiated for a future 20 year franchise relationship with a forum corporation, 471 U.S. at 467.[12] Regardless of that tension, the present case can be distinguished from *Burger King*. *Burger King* involved a sophisticated business person defendant who negotiated and received concessions from the forum state corporation. The Supreme Court placed importance on the fact that the bargaining process was deliberate, created continuing obligations, and the defendant was on notice because of the choice of law clause. *See Id.* at 485, 487. Lacking from the present case is the deliberate and calculated negotiations and any sort of notice function that a choice of law clause would provide. *Calphalon* is substantially similar to the present case, except that *Calphalon* involved a

---

[11]The court only characterized 17 months as "contractual."

[12]This tension was expressly recognized in the dissenting opinion filed with the *Calphalon* case. *Calphalon* 724-725 (Hillman, J. dissenting) ("This case falls squarely within the holding of *Burger King*, and is indistinguishable in all relevant respects.").

11

choice of law clause and a letter expressing legal claims, two factors not alleged in the present case. 228 F.3d at 723. Additionally, the business relationship in *Calphalon* was significantly longer: 17 years compared to 16 months. Under the *Calphalon* precedent the Defendants' contacts do not constitute purposeful availment.

However, the present case involves several factors that could serve to distinguish *Calphalon*. First, the Defendants here operated a website. In *Neogen*, the court characterized the defendant's website as "hold[ing] itself out as welcoming [forum state] business," because it offered to serve any state and included the forum state in a geographic breakdown of past customers. 282 F.3d at 891. Similarly, the website here was generally accessible and included an Ohio dealership as a reference. However, whether the Defendants here held themselves out as welcoming business from Ohio is immaterial because the Plaintiff makes no allegation that the defendant's website or letter have generated any business connection between the defendant and Ohio. In the other cases that placed importance on a website in the purposeful availment analysis, the website had created some commercial connection.[13] Second, Dawson sent a letter to the Ohio dealership stating that he would continue performing in-house training. The single letter could be a factor in favor of finding purposeful availment, as courts have considered letters threatening litigation a factor, but a single letter is the type of "attenuated" contact that the purposeful availment prong is designed to remove from the minimum contacts analysis. Finally, Dawson's meeting with an Ohio dealership representative in Louisiana failed to result in any connection to Ohio.

---

[13] *See Bird*, 289 F.3d at 872; *CompuServe*, 89 F.3d at 1261; *Neogen*, 282 F.3d at 891.

**12**

The sum of all of the contacts alleged here does not rise to the level of purposeful availment. The Court's inquiry can end here, however, the Court will analyze the remaining two factors as well.

*2. Cause of Action Arising from Defendant's Activities*

In addition to the requirement that a defendant purposefully avail itself of the privilege of acting in the forum state, the plaintiff's cause of action must arise from the defendant's activities which demonstrated purposeful availment. *Bird*, 289 F.3d at 874. This second factor requires a "substantial connection" between the cause of action and the defendant's in-state activities, but not that the cause of action "formally" arise from the defendant's in-state activities. *Id.* at 875. The arising from requirement has been characterized by the Sixth Circuit Court of Appeals as a "lenient standard." *Id.*

In *Calphalon*, the plaintiff sought a declaratory judgment that it did not owe the defendant any commissions and that the defendant's termination was not a breach of contract. 228 F.3d at 721. The defendant was an out of state representative to the plaintiff forum state corporation, and had made two physical visits to the forum state during the course of the two parties business connection. The defendant's performance of the terms of the parties' contract, which was the subject of the suit, occurred outside of the forum state and therefore the court found the arising from requirement not met. *Id.* at 724.

In *Neogen*, the plaintiff sued for trademark infringement, and the court found that the defendant's use of a disputed trade name and the defendant's 14 yearly forum state sales had caused possible economic harm in the forum state. 282 F.3d at 892. The court found the arising from prong of the specific jurisdiction test met by the possible causal connection between the contacts and the various economic harms alleged. *Id.*

In the present case, the Plaintiff alleged Defendants' use of its trade secrets and interference with contracts have caused economic harm in Ohio. The contractual relationship and the visits to and communication with Ohio under that relationship did not cause any harm to the Plaintiff or the forum state: both parties voluntarily entered into and performed under the relationship and no breach was alleged. Therefore, the Plaintiff's cause of action only derives from the post termination use of trade secrets and interference with contacts. Here, like in *Calphalon*, the Defendant Dawson's performance under the contract took place almost exclusively outside of Ohio. But, unlike in *Neogen*, any harm caused to the Plaintiff does not derive from the Defendants' forum state connections. Any connection between Dawson's receipt of trade secret information while employed and the present cause of action for Defendants' use of that trade secret information is tenuous. The plaintiff's cause of action does not derive from the contacts at issue in the purposeful availment analysis.

### 3. Exercise of Jurisdiction Reasonable

If the first two prongs of the personal jurisdiction test are met, an "inference" arises that the third factor is also met. *Bird*, 289 F.3d at 875 (citing *CompuServe*, 89 F.3d at 1268). Several factors are relevant to the reasonableness inquiry, "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

The first two prongs of the personal jurisdiction test have not been met and therefore no inference of reasonableness arises. Additionally, several factors in the reasonableness analysis weigh against the exercise of personal jurisdiction over the Defendants: the

Defendants face a potential burden in defending suit in Ohio where they derive no economic benefit, the forum state may not have a great interest in hearing this suit, and another state, where the Defendants have actually interfered with Plaintiff's contracts, is possibly a more efficient forum for the resolution of this conflict.

### VIII. CONCLUSION

The Defendants' contacts with the forum state are not continuous and systemic, nor do they rise to the level of purposeful availment. Although Defendant Dawson's contacts with Ohio satisfy the state's long arm statute, the exercise of jurisdiction over the Defendants in this case would violate the constitutional limits of the due process standard. Thus, Defendants' Motion to Dismiss (Doc. 2 & 19) is hereby GRANTED. The Clerk of Court is instructed to close this matter and remove it from the docket of this Court.

**IT IS SO ORDERED.**

 s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court